

**FILED**

9:39 am, 7/21/22

**Margaret Botkins**
**Clerk of Court**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

UFO MAGAZINE, INC.,

   Plaintiff,

vs.           Case No.  22-CV-078-NDF

SHOWTIME NETWORK, INC.,

   Defendant.

---

### ORDER ON DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on the Motion to Dismiss brought by Defendant Showtime Networks, Inc. ("Showtime").  Plaintiff UFO Magazine Inc. ("UFO Magazine") initially brought this suit against Showtime under the Lanham Act alleging that Showtime wrongfully used UFO Magazine's trademark, "UFO" as the title of a documentary-style television series ("UFO Series").   (ECF No. 1, p. 1); *see* 15 U.S.C. §§ 1051-1141n. Showtime now brings this motion to dismiss the complaint under Federal Rules for Civil Procedure 12(b)(6).  (ECF Nos. 12, 13).  Having carefully considered the motion, the response, and the reply, the Court GRANTS the motion.  The complaint is DISMISSED WITHOUT PREJUDICE.

<u>Background</u>

The facts according to UFO Magazine, stripped of conclusory allegations, are as follows:

UFO Magazine is the owner of United States Trademark Registration No. 3283437 for the trademark "UFO" for "Entertainment in the nature of a television series and motion picture film series." (ECF No. 1, ¶ 6).

UFO Magazine's Trademark Registration No. 3283437 for "UFO" was first registered on August 21, 2007, was renewed on June 5, 2017, section 8 and section 15 affidavits have been timely filed, and the registration is now incontestable.[1] (ECF No. 1, ¶ 7).

UFO Magazine's first commercial use of this mark was made in March 2007. (ECF No. 1, ¶ 8).

UFO Magazine is also the owner of United States Trademark Registration No. 4054372 for the trademark "UFO" for "Entertainment services, namely multimedia publishing of books, magazines, and electronic publications which deal with unidentified flying objects and related phenomena." (ECF No. 1, ¶ 9).

UFO Magazine's Trademark Registration No. 4054372 for "UFO" in connection with its entertainment and informational magazine publication was first registered on November 15, 2011, was renewed on March 25, 2021, section 8 and section 15 affidavits have been timely filed, and the registration is now incontestable. (ECF No. 1, ¶ 10).

UFO Magazine's first commercial use of this mark in connection with its magazine publication was made in February 1998. (ECF No. 1, ¶ 11).

Both "UFO" trademarks are very valuable intellectual properties of UFO Magazine. (ECF No. 1, ¶ 12).

---

[1] Whether the registrations of UFO Magazine's trademarks are incontestable is a legal conclusion that Showtime has not contested at this stage of the litigation.

UFO Magazine has invested substantial time, effort, and resources in developing its signature mark, and substantially more resources in using the mark to identify and promote its media products. (ECF No. 1, ¶ 13).

UFO Magazine has been involved in discussions for development of a UFO television series and/or movie for many years. (ECF No. 1. ¶ 14).

As recently as September 2020, UFO Magazine, in a sponsorship role with the Virtual International UFO Congress, sought collaborators for development of a movie. (ECF No. 1, ¶ 15).

UFO Magazine's website has also, for some time, included content seeking collaborators for movie development. (ECF No. 1, ¶ 16).

Beginning in mid-2021 and without license, permission, or authority from UFO Magazine, Defendant Showtime began airing a television series entitled "UFO" on its streaming service. (ECF No. 1, ¶ 17).

Defendant Showtime's use of "UFO" in connection with a television series infringes UFO Magazine's trademark and intellectual property rights in its "UFO" marks. (ECF No. 1, ¶ 18).

On December 4, 2021, shortly after becoming aware of Defendant Showtime's infringements of its "UFO" marks, UFO Magazine sent a letter to Defendant Showtime providing information about, and copies of, UFO Magazine's trademark registrations and uses and demanding that Defendant Showtime cease and desist from its infringing uses of the "UFO" mark. (ECF No. 1, ¶ 19).

On December 21, 2021, UFO Magazine sent a second letter to Defendant Showtime providing detailed information about the history of UFO Magazine's uses, providing legal

authority for its claim of trademark infringement, and again demanding that Defendant Showtime cease and desist from its infringing uses. (ECF No. 1, ¶ 20).

Despite having actual notice and knowledge of UFO Magazine's trademark registrations and UFO Magazine's trademark and intellectual property rights, Defendant Showtime has continued to stream its television programming bearing the infringing "UFO" title; has advertised and promoted its television programming bearing the infringing "UFO" title; and has generated substantial revenue from its television programming bearing the infringing "UFO" title. (ECF No. 1, ¶21).

Defendant Showtime's infringement continues to date. (ECF No. 1, ¶ 22).

In addition to the facts pleaded by Plaintiff, the Court takes judicial notice that the term UFO, an acronym for unidentified flying object, entered the English language in the early 1950s and has been used approximately 70 years to refer to "flying saucers" and "any unexplained object[s] moving in the sky, especially one[s] assumed by some observers to be of extraterrestrial origin." *See UFO, Webster's Unabridged Dictionary* (2d ed. 2001).

Additionally, the Court's review of the UFO Series itself reveals that the series uses a documentary format to display interviews, video clips, and still images, all choreographed with suspenseful music, to explore various historical, cultural, and political aspects of the UFO topic. (ECF No. 14-A).[2]

---

[2] In addition to the facts alleged in the complaint, the Court may also consider (1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice. *Gee v. Pacheco*, 627 F.3d 1178, 1181 (10th Cir. 2010). The UFO Series is central to Plaintiff's complaint and Plaintiff has not disputed Defendant's submission of the UFO Series. (ECF No. 14-A).

Applicable Legal Standards

In evaluating a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), the Court "must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012); *Iqbal*, 556 U.S. at 678. The Court "must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." *Moss* at 1161.

Analysis

Showtime argues that the First Amendment protects Showtime's choice of title for the UFO Series under the leading Second Circuit case *Rogers v. Grimaldi* because the title "UFO" is artistically relevant to the UFO Series and because the title "UFO" is not explicitly misleading. (ECF No. 13, pp. 9-13); *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). Showtime urges the Court to reject the genuine artistic motive test applied by the District of Colorado in *Stouffer v. National Geographic Partners, LLC*, but asserts that, even under *Stouffer*, UFO Magazine's case should be dismissed. (ECF No. 12, pp. 18-21); *see Stouffer v. Nat'l Geographic Partners, LLC*, 460 F. Supp. 3d 1133 (D. Colo. 2020).

5

UFO Magazine argues that the complaint satisfies pleading standards because facts in the complaint demonstrate Showtime used the title "UFO" just as UFO Magazine's registered trademark contemplates. (ECF No. 24, pp. 11-12). UFO Magazine additionally argues that the UFO Series is not an expressive work entitled to First Amendment protection, that the First Amendment amounts to an affirmative defense not justiciable under Rule 12(b)(6), and that, urging the court to apply *Stouffer* rather than *Rogers*, there exists questions of fact that foreclose dismissal under a Rule 12(b)(6) motion. (ECF No. 24, pp. 4, 12, 14).

The parties agree that The First Amendment limits application of the Lanham Act in a trademark action attacking the title of an expressive work. (ECF Nos. 24, p. 8; 13, p. 7). Yet UFO Magazine, without citation to legal authority, argues that the UFO Series does not merit protection under the First Amendment because the series, "a compilation and regurgitation of archived and stale tapes and tales that have been cobbled together for the purpose of generating revenue," is not an expressive work in the dictionary sense of "effectively conveying thought or feeling, such as 'she has big expressive eyes.'" (ECF No. 24, p. 4 n.7).

UFO Magazine's contention is meritless. The First Amendment protects expressive works, their titles, and advertising identifying the expressive work by title '[e]ven if [they are] not the expressive equal of Anna Karenina or Citizen Kane.'" *Gordon v. Drape Creative, Inc*., 909 F.3d 257, 269 (9th Cir. 2018) (*citing Brown v. Elec. Arts, Inc*., 724 F.3d 1235, 1241 (9th Cir. 2013)); *Twentieth Century Fox TV v. Empire Distribution, Inc.*, 875 F.3d 1192, 1197 (9th Cir. 2017) (noting *Rogers*, 875 F.2d at 1005, dealt with the movie

title and its advertising and promotion).  Motion pictures and television shows, including documentaries, are among the expressive works protected by the First Amendment. *See Bouchat v. Baltimore Ravens Ltd. P'ship*, 737 F.3d 932, 945 (4th Cir. 2013); *Stouffer*, 460 F. Supp. 3d at 1143; *Rogers*, 875 F.2d at 997 ("[m]ovies, plays, books, and songs are all indisputably works of artistic expression and deserve protection").   "The fact that expressive materials are sold neither renders the speech unprotected, nor alters level of protection under the First Amendment." *Cardtoons L.C. v. Major League Baseball Players Ass'n,* 95 F.3d 959, 970 (10th Cir. 1996) (cleaned up).

Moreover, in this context, the analysis is not – as UFO Magazine contends – whether the UFO Series effectively "communicates thought or feeling," but whether the UFO Series is actually just commercial speech that does "no more than propose a commercial transaction" and that receives less protection under the First Amendment. *See Facenda v. N.F.L. Films, Inc.,* 542 F.3d 1007, 1016 (3d Cir. 2008) (*citing United States v. United Foods, Inc*., 533 U.S. 405, 409 (2001).

UFO Magazine's complaint fails to contain any description of the UFO Series whatsoever, but even as characterized by UFO Magazine as a cobbled-together "compilation and regurgitation of archived and stale tapes and tales," the UFO Series, and its title, falls firmly within the range of expressive works protected by the First Amendment.  (ECF No. 24, p. 4); *see Empire Distribution, Inc.*, 875 F.3d at 1197*; Bouchat*, 737 F.3d at 945.  There is nothing in the Complaint to indicate that the UFO Series merely proposes a commercial transaction. (ECF No. 1).  The Court's review of the UFO Series itself produces the same result. (ECF No. 14-A).  The UFO Series presents interviews,

videos, and images, together with suspenseful music, to explore various historical, cultural, and political aspects of the UFO topic. *Id.* Thus, the UFO Series is a documentary protected by the First Amendment. *See Bouchat*, 737 F.3d at 945; *Stouffer* 460 F. Supp. 3d at 1143.

Plaintiff's argument that the First Amendment tests amount to affirmative defenses that are not justiciable under Rule 12(b)(6), again without citation to legal authority, are equally fruitless. Numerous courts have applied *Rogers* at this stage of litigation and Plaintiff's preferred case, *Stouffer*, was dismissed pursuant to Rule 12(b)(6). *Stouffer*, 460 F. Supp. 3d at 1146; *see, e.g., Brown,* 724 F.3d at 1240; *Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*, 868 F. Supp. 2d 172, 174 (S.D.N.Y. 2012); *Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 947 F. Supp. 2d 922, 926, 934 (N.D. Ind. 2013), *aff'd on other grounds,* 763 F.3d 696, (7th Cir. 2014); *Hidden City Philadelphia v. ABC, Inc.*, No. 18-65, 2019 WL 1003637, at *1 (E.D. Pa. 2019).

A.  Analysis under *Rogers*

Under the Second Circuit's test articulated in *Rogers*, and adopted in some form by the Fifth, Sixth, Ninth, and Eleventh Circuits, the First Amendment holds the title of an expressive work beyond the reach of the Lanham Act if, considering all of the facts and circumstances, it:

1. Has at least minimal artistic relevance to the underlying work;

2. Unless it explicitly misleads as to the source or the content of the work.

*Rogers*, 875 F.2d at 999, 1006; *See Westchester Media v. PRL USA Holdings, Inc.,* 214 F.3d 658, (5th Cir. 2000)*; Parks v. LaFace Records,* 329 F.3d 437 (6th Cir. 2003)*; Mattel*

*Inc. v. Walking Mountain Prods.,* 353 F.3d 792, 808 n.13 (9th Cir. 2003); *Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.,* 683 F.3d 1266, 1277 (11th Cir. 2012)*.*

The first prong of the *Rogers* test asks whether the title, "UFO," has at least minimal relevance to the UFO Series. *Rogers*, 875 F.2d at 999. It does. The UFO Series explores various historical, cultural, and political aspects of the UFO topic. (ECF No. 14-A). The UFO Series is about UFOs and that's what the title says. UFO Magazine does not contend otherwise. Accordingly, UFO Magazine cannot prevail on the first prong of the *Rogers* test.

The second prong of the *Rogers* test is whether the title "UFO" is explicitly misleading as to the source or content of the work. *Rogers* 875 F.2d at 999. "This second prong of the *Rogers* test 'points directly at the purpose of trademark law, namely to avoid confusion in the marketplace by allowing a trademark owner to prevent others from duping consumers into buying a product they mistakenly believe is sponsored [or created] by the trademark owner.'" *Gordon v. Drape Creative, Inc.,* 909 F.3d 257, 269 (9th Cir. 2018) (citing *Brown*, 724 F.3d at 1245). "The mere use of a trademark alone cannot suffice to make such use explicitly misleading." *E.S.S.*, 547 F.3d at 1100 (*citing Mattel, Inc. v. MCA Recs., Inc*., 296 F.3d 894, 902 (9th Cir. 2002)). Courts have held that use is explicitly misleading if the junior user makes affirmatively misleading representations in conjunction with the mark's use, *Brown* at 724 F3d 1245-46, or if the junior user uses the mark in the same way as the senior user without adding at least minimal expressive content beyond the mark itself, *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 270 (9th Cir. 2018).

UFO Magazine's complaint fails to allege any facts relevant to the second prong of *Rogers*. First, the complaint states no facts indicating that Showtime has expressly stated any connection between its UFO Series and UFO Magazine in any way. To the contrary, Showtime, in the first screen of the first episode of UFO Series, displays text indicating that the series is presented by "Showtime Documentary Films," is a "Bad Robot/Zipper Bros Films production" made "in association with Sutter Road Picture Company and Diamond Docs." (ECF No. 14-A). Thus Showtime explicitly identifies itself and other responsible companies, but not UFO Magazine, as being responsible for the content of the Series.

Next, the complaint does not include any description of the Plaintiff's own products or any facts indicating that the UFO Series copies Plaintiff's books, magazines, or electronics publications without adding at least minimal expressive content. (ECF No. 1). Moreover, Plaintiff apparently cannot allege that the UFO Series copied UFO Magazine's television series or motion pictures because UFO Magazine has only "been in discussions for development of a UFO motion picture and/or television series for many years . . . as recently as September 2020, UFO Magazine, in a sponsorship role with the Virtual International UFO Congress, sought collaborators for development of a movie . . .," and "UFO Magazine's website has also, for some time, included content seeking collaborators for movie development." (ECF No. 1. ¶¶ 14-16). The result may be different if there were facts before the Court indicating that Showtime simply reproduced the specific content of Plaintiff's text publications as narration behind images or videos essentially copying the Plaintiff's graphics, or if Showtime had copied the script of UFO Magazine's as-yet-

unmade show.  But that is not the pleading before the Court.  As pleaded, UFO Magazine cannot prevail under the second prong of the *Rogers* test.

B. Analysis under *Stouffer*

UFO Magazine contends that the Court should apply the novel test articulated by the District of Colorado in *Stouffer* instead of the test in *Rogers*.  (ECF No. 24, p. 13). The court in *Stouffer* noted that the Tenth Circuit and Supreme Court have not spoken definitively on the application of *Rogers* and applied its own test to dismiss trademark claims with prejudice under Rule 12(b)(6).  *Stouffer*, 460 F. Supp. 3d at 1134.  Under the *Stouffer* test, the First Amendment holds the title of an expressive work beyond the reach of the Lanham act if there was a "genuine artistic motive" to use the mark.  *Stouffer*, 460 F. Supp. 3d at 1140.  The court noted that, although the test examines the junior user's state of mind, "the objective facts may sometimes excuse further inquiry into the junior user's subjective motives." *Id.*  The *Stouffer* court articulated six factors to weigh when evaluating the defendant's genuine artistic motive. *Id.*  The Court now turns to, and applies, those factors:

1. <u>Do the senior and junior users use the mark to identify the same kind, or a similar kind, of goods or services?</u>

No.  In this case, UFO Magazine uses the mark for text products including books, magazines, and electronic publications, while Showtime uses the mark for a streaming television series. (ECF No. 1, ¶¶ 9, 17).  UFO Magazine does not allege any facts indicating that it has made a movie or television series.  This factor weighs in favor of Showtime.

11

2.  <u>To what extent has the junior user added his or her own expressive content to the work beyond the mark itself?</u>

UFO Magazine has not alleged any facts about the content of its own products or compared them to the contents to the UFO Series. (ECF No. 1).  Based on the facts in the pleading currently before the Court, the Court must conclude that the contents of the UFO Series are solely the expressive work of Showtime.  This factor weighs in favor of Showtime.

3.  <u>Does the timing of the junior user's use in any way suggest a motive to capitalize on popularity of the senior user's mark?</u>

UFO Magazine has not alleged any facts indicating that Showtime's timing has any relation to UFO Magazine or any of its products.  UFO Magazine concluded its most recent active attempt to produce a motion picture in 2020, while Showtime began airing the UFO Series in mid-2021. (ECF No. 1. ¶¶ 15, 17).  Based on the pleading before the Court, the court must conclude that Showtime's timing does not suggest a motive to capitalize on UFO Magazine's popularity.  This factor weighs in favor of Showtime.

4.  <u>In what way is the mark artistically related to the underlying work, service, or product?</u>

The title "UFO" is directly related to the content of the UFO Series.  The title of the UFO Series is "UFO" and the series is about UFOs. (ECF Nos. 1, ¶ 17; 14-A).  The artistic connection is that the term "UFO" accurately describes the content of the series.  This factor weighs in favor of Showtime.

5.  <u>Has the junior user made any statement to the public, or engaged in any conduct known to the public, that suggests a non-artistic motive?</u>

UFO Magazine has not pleaded any facts indicating that Showtime has made any statement to the public or engaged in conduct known to the public that suggests a non-artistic motive in using the title "UFO" for the UFO Series. (ECF No. 1).  This factor weighs in favor of Showtime.

6.  <u>Has the junior user made any statement in private, or engaged in any conduct in private, that suggests a non-artistic motive?</u>

UFO Magazine has pleaded no facts indicating that Showtime has made any statement in private, or engaged in any conduct in private, that suggests a non-artistic motive. (ECF No. 1).  This factor weighs in favor of Showtime.

Based on the pleading before the Court, no factors weigh in favor of UFO Magazine. Among the factors weighing in favor of Showtime, one deserves particular weight: the use of the title "UFO" to describe a documentary series about UFOs.  The term UFO is a common term that has been a part of the English language since the 1950s, long before UFO Magazine's first uses, and there is no indication whatsoever that Showtime used the term in any way to reference UFO Magazine.  *See also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc*., 543 U.S. 111, 119 (2004) ("[A]s to plaintiff's trademark claim, '[t]he use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin or ownership of the product,'" citing *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 528 (1924)).  Based on the pleading before the Court, the only plausible

inference is that Showtime intended to invoke the ordinary dictionary meaning of the term UFO to accurately describe the contents of the UFO Series.  Such use falls securely within the protection of the First Amendment.

Conclusion

For the reasons stated above, UFO Magazine has failed to plead sufficient facts to make it plausible that Showtime's conduct falls within the prohibitions of the Lanham Act as constrained by the First Amendment.  The Court reaches this conclusion applying both the leading case *Rogers* and UFO Magazine's preferred test under *Stouffer*.  Accordingly, the motion to dismiss is GRANTED, and the complaint is DISMISSED WITHOUT PREJUDICE.  UFO Magazine has leave to amend the complaint to address the noted deficiencies by **August 12, 2022**.  Absent a timely filed amended complaint, the dismissal shall become with prejudice.

Dated this 21st day of July, 2022.

Nancy D. Freudenthal
_____
NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE