

FILED

**Margaret Botkins**
**Clerk of Court**

10:12 am, 11/3/22

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UFO MAGAZINE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SHOWTIME NETWORK, INC., <br><br> Defendant. | Case No.  22-CV-078-NDF |

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on the motion to dismiss the amended complaint brought by Defendant Showtime Networks, Inc. ("Showtime").  ECF 31.  Plaintiff UFO Magazine Inc. ("UFO Magazine") brought this suit against Showtime under the Lanham Act alleging that Showtime wrongfully used UFO Magazine's trademark, "UFO" as the title of a documentary-style television series ("UFO Series").  ECF No. 1, p. 1; *see* 15 U.S.C. §§ 1051-1141n.  The Court dismissed the original complaint without prejudice. ECF 27.  Plaintiff filed an amended complaint, ECF 28, and Showtime now brings this motion to dismiss the amended complaint under Federal Rules for Civil Procedure 12(b)(6). ECF 31, 32.  Having carefully considered the motion, the response, and the reply, the Court GRANTS the motion.  The amended complaint is DISMISSED WITH PREJUDICE.

Background

a.  The following facts in the Amended Complaint are materially the same as those alleged in the original complaint and previously considered in the Court's Order Granting the Motion to Dismiss.  ECF 1, 27, 28.

UFO Magazine is the owner of United States Trademark Registration No. 3283437 for the trademark "UFO" for "[e]ntertainment in the nature of a television series and motion picture film series" in International Class 41.  UFO Magazine first used this mark on March 26, 2007.  ECF No. 28, ¶ 7, 8.

This trademark was first registered on August 21, 2007 and was renewed on June 5, 2017.  Section 8 and section 15 affidavits have been timely filed and the registration is now incontestable.[1]  ECF 28, ¶ 9.

UFO Magazine is also the owner of United States Trademark Registration No. 4054372 for the trademark "UFO" for "[e]ntertainment services, namely multimedia publishing of books, magazines, and electronic publications which deal with unidentified flying objects and related phenomena" in International Class 41.  ECF 28, ¶ 10.

The trademark was first registered on November 15, 2011 and was renewed on March 25, 2021. Section 8 and section 15 affidavits have been timely filed, and the registration is now incontestable.  ECF 28, ¶ 13.  The mark was originally registered as No. 2508337 on November 20, 2001.  ECF 28, ¶ 11.  UFO Magazine's first commercial use of its marks was made in February 1998.  ECF No. 28, ¶ 12.

---

[1] Whether the registrations of UFO Magazine's trademarks are incontestable is a legal conclusion that Showtime has not contested at this stage of the litigation.

Both "UFO" trademarks are very valuable intellectual properties of UFO Magazine. ECF No. 28, ¶ 14.

UFO Magazine has been involved in discussions for development of a UFO television series and/or movie for many years. ECF No. 28. ¶ 24. As recently as September 2020, UFO Magazine, in a sponsorship role with the Virtual International UFO Congress, sought collaborators for development of a movie. ECF 28, ¶ 25.

Beginning in mid-2021 and without license, permission, or authority from UFO Magazine, Defendant Showtime began airing a television series entitled "UFO" on its streaming service. ECF 28, ¶ 27.

On December 4, 2021, shortly after becoming aware of Defendant Showtime's infringements of its "UFO" marks, UFO Magazine sent a letter to Defendant Showtime providing information about, and copies of, UFO Magazine's trademark registrations and uses and demanding that Defendant Showtime cease and desist from its infringing uses of the "UFO" mark. ECF 28, ¶ 34.

On December 21, 2021 UFO Magazine sent a second letter to Defendant Showtime providing detailed information about the history of UFO Magazine's uses, providing legal authority for its claim of trademark infringement, and again demanding that Defendant Showtime cease and desist from its infringing uses. ECF 28, ¶ 35.

Despite having actual notice and knowledge of UFO Magazine's trademark registrations and UFO Magazine's trademark and intellectual property rights, Defendant Showtime has continued to stream its television programming bearing the infringing "UFO" title; has advertised and promoted its television programming bearing the infringing

"UFO" title; and has generated substantial revenue from its television programming bearing the infringing "UFO" title. ECF No. 28, ¶37. Defendant Showtime's infringement continues to date. ECF 28, ¶ 37.

b.      As in the Order Granting the Motion to Dismiss, ECF 27, the Court takes judicial notice that the term UFO, an acronym for unidentified flying object, entered the English language in the early 1950s and has been used approximately 70 years to refer to "flying saucers" and "any unexplained object[s] moving in the sky, especially one[s] assumed by some observers to be of extraterrestrial origin." *See UFO, Webster's Unabridged Dictionary* (2d ed. 2001).

c.      Also as in the Order Granting the Motion to Dismiss, ECF 27, the Court's review of the UFO Series reveals that the series uses a documentary format to display interviews, video clips, and still images, all choreographed with suspenseful music, to explore various historical, cultural, and political aspects of the UFO topic. ECF 14-A.[2]

d.      The Plaintiff adds the following facts in the Amended Complaint, ECF 28:

The "UFO" family of trademarks were registered and have been used to identify UFO Magazine as the creator and developer of present and prospective business activities, opportunities, and relationships that have actual present and prospective pecuniary value to UFO Magazine, including the production and marketing of entertainment publications and a television series and/or movie for public distribution, together with the

---

[2] In addition to the facts alleged in the complaint, the Court may also consider (1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice. *Gee v. Pacheco*, 627 F.3d 1178, 1181 (10th Cir. 2010). The UFO Series is central to Plaintiff's complaint and Plaintiff has not disputed Defendant's submission of the UFO Series. (ECF No. 14-A).

merchandising opportunities that are regularly associated with publications, television, and/or movie programming, thus creating substantial present and prospective value in the "UFO" trademarks and making the "UFO" trademarks valuable intellectual properties of UFO Magazine. ECF 28, ¶ 14.

Content published under UFO Magazine's marks explores the historical, cultural, and political aspects of unidentified flying objects and includes, by way of example only, features about "A History of UFO Crashes" by Kevin D. Randle; the Nash-Fortenberry Incident concerning unidentified flying object sightings by two Pan American Airlines pilots; a 2006 UFO sighting over O'Hare airport in Chicago; historian Richard Dolan's analysis (one of several of his books concerning UFOs) explaining why unidentified flying objects are taken seriously in and covered up by national security circles around the world; movie producer Steven Spielberg's "Real Stories of Alien Abduction;" an eyewitness account of alien abductions by Yancy Spence entitled "The Day Manhattan Stood Still;" the 1989 disclosures by former government physicist, Bob Lazar, about Nevada's Area 51 and alleged government involvement in reverse engineering alien spacecraft; the UFO Congress, an annual conference established in 1991 and dedicated to the dissemination of information related to many aspects of unidentified flying objects; a movie in production concerning Roswell, New Mexico where the crash of an alien spacecraft was claimed to have occurred; strategic weapons and unidentified flying objects in the 21st century; unidentified flying objects in pop culture; and the alien abduction ordeal of Emma Woods. ECF 28, ¶ 16.

UFO Magazine's website has also, for some time, included content seeking collaborators for movie development. ECF No. 28, ¶ 26. A screenshot of UFO Magazine's website says "UFO Magazine, Inc is looking to make a UFO movie, if interested in participating in such a project, please phone Peter Kane (203) 968-8855 x3334. UFO is looking to sell one or all of its assets." ECF 28-1.

UFO Magazine has devoted substantial time, effort, and resources to distributing and promoting uses of its mark within the entertainment, motion picture, and television industries. ECF 28 ¶ 24. UFO Magazine's mark and magazine have been used as set dressing in numerous motion pictures, including the 2000-2002 television series, "Roswell," the 2000 Television production "UFOs: The Millenium and Beyond," the 2002 television production "The Secret World of Close Encounters," the 2002 motion picture "The Mothman Prophecies," the 2009 motion picture "Race to Witch Mountain," and the 2009 film "I Want to Believe." ECF 28, ¶¶ 17-22.

There are descriptive alternatives to the term "UFO" that could be used as a title including "Unidentified Flying Objects" or "Sightings of the Unknown" or "Alien Spacecraft" or "Flying Saucers" or "Extraterrestrials." ECF 28, ¶ 29.

It is entertainment industry practice not to duplicate titles used by others. ECF 28, ¶30. The practice has been codified in regulations of the Title Registration Bureau of the Motion Picture Association, of which Defendant Showtime's parent corporation, Paramount, is a member. ECF 28 ¶ 31. Plaintiff alleges, on information and belief, that Showtime performed a "clearance" of potential titles, a process of investigating other uses of potential titles and that includes searches of registered trademarks. Further, Plaintiff

alleges that Showtime had actual notice of UFO Magazine's trademark for "[e]ntertainment in the nature of a television series and motion picture film series." ECF 28, ¶ 32-33.

Plaintiff alleges that, on information and belief, Defendant Showtime's purpose in continuing to stream the programming using UFO Magazine's mark is to increase the number of subscribers paying to access to Defendant's service and thereby to increase Defendant's revenue. ECF 28, ¶ 38.

The Plaintiff attached numerous pages of its various magazine articles, including a retrospective issue of the magazine from Summer 2021, a Magazine cover from the February/ March 2005 edition of the Magazine, a sales sheet featuring the Cover of "The UFO Magazine UFO Encyclopedia," and a timeline of past Government UFO reports. ECF 28-2.

## Applicable Legal Standards

In evaluating a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), the Court "must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012); *Iqbal*, 556 U.S. at 678. The Court "must accept as true all well-pleaded

facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." *Moss* at 1161.

Analysis

The First Amendment limits the Lanham Act's application in an action challenging the title of an expressive work. *See Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). As this Court explained in its previous order:

> The First Amendment protects expressive works, their titles, and advertising identifying the expressive work by title '[e]ven if [they are] not the expressive equal of Anna Karenina or Citizen Kane.'" *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 269 (9th Cir. 2018) (citing *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013)); *Twentieth Century Fox TV v. Empire Distribution, Inc.*, 875 F.3d 1192, 1197 (9th Cir. 2017) (noting *Rogers*, 875 F.2d at 1005, dealt with the movie title and its advertising and promotion). Motion pictures and television shows, including documentaries, are among the expressive works protected by the First Amendment. *See Bouchat v. Baltimore Ravens Ltd. P'ship*, 737 F.3d 932, 945 (4th Cir. 2013); *Stouffer*, 460 F. Supp. 3d 1133; 1143 *Rogers*, 875 F.2d at 997 ("[m]ovies, plays, books, and songs are all indisputably works of artistic expression and deserve protection"). "The fact that expressive materials are sold neither renders the speech unprotected, nor alters level of protection under the First Amendment." *Cardtoons L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 970 (10th Cir. 1996) (cleaned up).

ECF 27, pp. 6-7.

The Court previously found that Showtime's UFO Series was entitled to protection under the leading *Rogers* test because (1) the title "UFO" has at least minimal artistic relevance to the underlying work; and, (2) it did not explicitly mislead as to the source or content of the work. ECF 27, p. 8; 875 F.2d 994 (2d Cir. 1989). ECF 27, pp 9-11.

The Court, at Plaintiff's invitation, also examined the UFO Series under the District of Colorado's new test in *Stouffer* and found that each of the six factors weighed in favor of Showtime. *Stouffer v. Nat'l Geographic Partners*, 460 F. Supp. 3d 1133; 1143; ECF 27,

8

pp 11-14. The Court gave particular weight to the Artistic Relevance factor because "[t]he title 'UFO' is directly related to the content of the UFO Series. The title of the UFO Series is 'UFO', and the series is about UFOs. The artistic connection is that the term 'UFO' accurately describes the content of the series." ECF 27, p 14.

Plaintiff does not ask the Court to revisit its analysis under *Rogers* but instead argues that the Court should apply the Eighth Circuit's "no alternative avenues test," or create a new test, or reevaluate the Amended Complaint under the *Stouffer* factors.

This Court declines to create a new First Amendment test, particularly as here where the Plaintiff has not proposed a specific formulation. Furthermore, the Tenth Circuit has rejected Plaintiff's preferred "no alternate avenues" test in *Cardtoons,* holding that "in the context of intellectual property [the] 'no alternative avenues' test does not sufficiently accommodate the public's interest in free expression." *Cardtoons,* 95 F.3d at 971 (citing *Rogers,* 875 F.2d at 999). Accordingly, UFO Magazine's suggestion that Showtime could have used other terms to describe UFO-related content is not relevant to the First Amendment analysis in this Circuit.

The Court lastly returns to each of the six factors under the *Stouffer* test. Under the *Stouffer* test, the First Amendment holds the title of an expressive work beyond the reach of the Lanham Act if there was a "genuine artistic motive" to use the mark. *Stouffer*, 460 F. Supp. 3d at 1140. The *Stouffer* test articulates the following six factors, analyzed each in turn, to evaluate the "junior user's subjective motives." *Id.*

*(1) Do the senior and junior users use the mark to identify the same kind, or a similar kind, of goods or services?*

9

UFO Magazine urges that this factor weighs in favor of UFO Magazine because it has alleged that it uses the mark for "Entertainment in the nature of a television series and motion picture film series," as evidenced by its license of the magazine for set dressing in other television series and movies. This Court previously found that "UFO Magazine uses the mark for text products including books, magazines, and electronic publications, while Showtime uses the mark for a streaming television series," and that " UFO Magazine does not allege any facts indicating that it has made a movie or television series." ECF 27, p. 11. The amended complaint still does not reflect any facts indicating that UFO Magazine has made a movie or television series. Mere use of the magazine or mark on a movie set does not change the Court's analysis. This factor weighs in favor of Showtime.

*(2) To what extent has the junior user added his or her own expressive content to the work beyond the mark itself?*

The Court previously found that the expressive content factor weighed in favor of Showtime because UFO Magazine had not alleged any facts about the content of its products. ECF 27, p. 12. UFO Magazine has now provided descriptions of its written publications and attached relevant samples to its complaint as exhibits. ECF 28, 28-2.

UFO Magazine argues that the UFO Series covers the same substantive content as UFO Magazine with the only *de minimis* difference being the addition of music. To reach this result, Plaintiff copied language this Court used to describe Showtime's UFO Series and used it to describe its own publication. *See* ECF 27, p. 4 ("[the UFO Series] uses a documentary format . . . to explore various historical, cultural, and political aspects of the UFO topic"); *c.f.* ECF 28, ¶ 16 ("[c]ontent published under [UFO Magazine's] mark

10

explores historical, cultural, and political aspects of unidentified flying objects"). Now that the characterizations are the same, so the argument goes, the only difference is that the UFO Series has music. Nevertheless, UFO Magazine's argument is not supported by the facts considered at this stage of the litigation.

The Court has reviewed Plaintiff's specific descriptions of UFO Magazine publications together with the exhibits attached to the complaint. The Court has also reviewed the video of the UFO Series provided by Showtime. The Court concludes that, although both undoubtedly "explore[] historical, cultural, and political aspects of unidentified flying objects," including many of the same historical accounts and theories, the differences are substantial. The Court cannot identify, nor has UFO Magazine pointed to, any UFO Magazine publication that has been copied by the UFO Series without artistic differences. There is more than one way to cover a topic, and it appears from the Court's review that the script and video content of the UFO Series is wholly unique to Showtime. This factor weighs in favor of Showtime.

*(3) Does the timing of the junior user's use in any way suggest a motive to capitalize on the popularity of the senior user's mark?*

UFO Magazine alleges, on information and belief, that Showtime knew of UFO Magazine's trademark before releasing the title "UFO" because Showtime used the entertainment industry's standard title-clearance process. From here, UFO Magazine argues that prior knowledge of the UFO Trademark is a sufficient circumstance to infer that Showtime "deliberately traded on [UFO Magazine's] goodwill in its trademarks."

11

UFO Magazine does not cite any cases holding that a junior user's mere knowledge of a mark diminishes First Amendment protection - for good reason. Numerous cases cited by the parties and considered by the Court contemplate junior users who certainly knew about the existing mark but who were still protected by the First Amendment. *See e.g. Rogers,* 875 F.2d at 996-97 (the First Amendment protected using the title "Fred and Ginger" in a film about famous performers Fred Astaire and Ginger Rogers); *Stouffer* 460 F. Supp. 3d at 1133 (D. Colo. 2020) (the First Amendment protected titles "America the Wild" and "Untamed America" after producers failed to license the title "Wild America."); *Brown*, 724 F.3d at 1240 (the First Amendment protected using football legend Jim Brown's image in a football video game). It does not logically follow that simply knowing about a mark evidences a positive intent to "capitalize on UFO Magazine's popularity." There must be more.

The Court previously held that the timing of the title "UFO" did not suggest an intent to capitalize because "UFO Magazine concluded its most recent active attempt to produce a motion picture in 2020, while Showtime began airing the UFO Series in mid-2021." No new facts change that analysis and there is still no apparent correlation between Showtime's use of the mark and any facts related to UFO Magazine.

It is worth noting that UFO Magazine recharacterizes the "timing" inquiry of this *Stouffer* factor as broadly encompassing the "circumstances" at issue. Such a broad redefinition risks double-counting each of the other factors in the overall *Stouffer* test. For instance, UFO Magazine argues that Showtime's conduct after releasing the UFO series is relevant to this factor even though the Defendant's conduct and statements are specifically

questioned in elements five and six. This Court declines to expand the discrete question on timing into a sweeping inquiry of the overall circumstances. Nevertheless, here it makes no difference. Whether simply examining timing or by incorporating the reasons discussed in factors five and six, the Court finds that this element weighs in favor of Showtime.

*4. In what way is the mark artistically related to the underlying work, service, or product?*

The Court previously assigned particular weight to this factor and UFO Magazine agrees that the title "UFO" is directly related to the content of the UFO Series: UFOs. This factor weighs in favor of Showtime.

*(5) Has the junior user made any statement to the public, or engaged in any conduct known to the public, that suggests a non-artistic motive?*

UFO Magazine argues that Showtime's public advertising suggests a non-artistic financial motive. Such an argument runs counter to the Tenth Circuit's holding that "The fact that expressive materials are sold neither renders the speech unprotected, nor alters the level of protection under the First Amendment." *Cardtoons,* 95 F.3d at 970. Moreover, First Amendment protection explicitly extends to the advertising itself. *Gordon,* 909 F.3d at 269. Financial motives do not render expression non-artistic. Since there is no allegation of public conduct or statements suggesting a non-artistic motive, this factor weighs in favor of Showtime.

*(6) Has the junior user made any statement in private, or engaged in any conduct in private, that suggests a non-artistic motive?*

UFO Magazine argues that, by declining to cease using the "UFO" mark upon UFO Magazine's challenge, Showtime has engaged in conduct suggesting a non-artistic motive.

This argument is not persuasive. Under *Stouffer's* artistic-motive test, a party with an artistic motive is Constitutionally justified in taking Showtime's position. Showtime's First Amendment protection is not extinguished by its exercise as UFO Magazine suggests. Since there is no allegation of private conduct or statements suggesting a non-artistic motive, this element weighs in Showtime's favor.

Based on the pleading before the Court, no *Stouffer* factors weigh in favor of UFO Magazine and the Court holds that Showtime's use of the title "UFO" is protected by the First Amendment.

## Conclusion

For the reasons stated above, UFO Magazine has failed to plead sufficient facts in the amended complaint to make it plausible that Showtime's conduct falls outside of the First Amendment's protection. No facts in the Amended Complaint alter the Court's previous analysis under the leading *Rogers* test and reevaluation of the additional facts and arguments under the District of Colorado's *Stouffer* test reaches the same result. Accordingly, the motion to dismiss is GRANTED, and the complaint is DISMISSED WITH PREJUDICE.

Dated this 3rd day of November, 2022.

_____
NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE